## DANPAR ASSOCIATES *v.* SOMERSVILLE MILLS SALES ROOM, INC.

BOGDANSKI, PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued November 6—decision released December 9, 1980

*Martin A. Gould,* for the appellant (plaintiff).

*Henry C. Ide,* with whom was *Bruce H. Stanger,* for the appellee (defendant).

PARSKEY, J.  The plaintiff landlord brought this action seeking to recover damages, including reletting costs and rent due for the balance of a five year lease, arising out of a breach of a lease of commercial premises in the Danbury Shopping Center by the defendant tenant.  The lease agreement

between the parties provided for a five year term commencing June 1, 1971, with an option for the defendant to renew for an additional five years. The defendant could assign the lease with the prior written consent of the landlord.

On September 23, 1973, the defendant proposed to assign the lease, remaining liable under the terms of the lease for the balance of the original five year term but not for the renewal period in the event the new tenant exercised the renewal option. The prospective tenant would not rent the premises without the option. Although the plaintiff was willing to accept the proposed tenant for the balance of the five year term, it did not wish the proposed tenant to have the renewal option contained in the original lease. Negotiations broke down on this point; the defendant vacated the premises shortly thereafter and ceased paying rent. The store was not relet until July 1, 1975.

The plaintiff thereafter commenced this action against the defendant for breach of lease seeking $18,333.36 for twenty months rent, $3492 for a broker's commission, $350 for repainting the store and $300 to clean the carpet for a total of $22,475.36. The tenant defended primarily on the basis of the landlord's breach of lease and failure to mitigate damages stemming from the failure to accept the proposed tenant in 1973. The trial court concluded that the plaintiff could not recover rent or reletting expenses but did award $650 in renovation costs, which were disputed. From this decision, the plaintiff has appealed.

Although other avenues were available, the plaintiff chose to bring an action for damages for breach of the lease, thereby manifesting an intention to

terminate the lease. *Sagamore Corporation* v. *Will-cutt,* 120 Conn. 315, 318, 180 A. 464 (1935). In these circumstances it was entitled to recover those damages which would naturally flow from a total breach of the lease. Id. It was also under an obligation, however, to minimize the damages occasioned by the defaulting tenant's breach of contract. *Willametz* v. *Goldfeld,* 171 Conn. 622, 627, 370 A.2d 1089 (1976); *Brown* v. *Middle Atlantic Transportation Co.,* 131 Conn. 197, 199, 38 A.2d 677 (1944).

The duty to mitigate damages did not require the plaintiff to sacrifice any substantial right of its own; *Eastern Sportswear Co.* v. *S. Augstein & Co.,* 141 Conn. 420, 425, 106 A.2d 476 (1954); or to exalt the interests of the tenant above its own. Id.; *Raff Co.* v. *Murphy,* 110 Conn. 234, 243, 147 A. 709 (1929). It was required to make reasonable efforts to minimize damages. What constitutes a reasonable effort under the circumstances of a particular case is a question of fact for the trier. *Connecticut Light & Power Co.* v. *Costello,* 161 Conn. 430, 442, 288 A.2d 415 (1971). Since the general rule for the measure of damages in contract is that the award should place the injured party in the same position as he would have been in had the contract been performed; *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 404–405, 365 A.2d 1086 (1976); in assessing the reasonableness of the landlord's efforts to mitigate damages the trier may consider whether the landlord was justified in refusing to rent the demised premises to a prospective tenant who was otherwise satisfactory and who would have put him in at least as good a position as if the original contract had been fully performed.

Under the terms of the lease the tenant could not assign or sublet its interest without the prior

written consent of the landlord. The plaintiff correctly argues that under this provision it could refuse to consent to an assignment and the reasons for its action were immaterial. *Robinson* v. *Weitz*, 171 Conn. 545, 549, 370 A.2d 1066 (1976). The plaintiff then argues that to prevent it from recovering rent because of its refusal to rent the leased premises to the proffered assignee compelled it to permit the very assignment which it had an absolute right to reject. This argument, while superficially appealing, misses the point because the landlord still need not accept the prospective tenant. It can relet the premises to a tenant of its own choice at a rent greater than that which the proffered tenant was willing to pay. Therefore, while the holding of this case has the practical effect of limiting the landlord's right to refuse an assignment, it does not render the right meaningless. Moreover, given the posture of the present case, we are not concerned with either the tenant's right to assign or the landlord's right to refuse to consent to an assignment. The proper focus in the present case is on the landlord's duty to minimize damages. In weighing the reasonableness of the landlord's conduct under these circumstances the trial court was justified in concluding that it was unreasonable for the landlord to reject an offer which would have placed it in statu quo ante. See cases collected in annot., 21 A.L.R.3d 534, 592–94.

There is no error.

In this opinion the other judges concurred.