[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue presented in this case is: whether the creditor, by taking money from the debtor following its application for a wage execution due to the debtor's default, waived its right to later use that same wage execution when the debtor again falls into default. In this case the creditor applied for a wage execution in November, 1990 upon the debtor's default of the weekly order entered pursuant to the October 1989 judgment. The wage execution was signed December 10, 1990; then the debtor made a payment on December 12, 1990, thereby bringing himself current. On December 20, 1990, the signed wage execution was returned to the creditor's attorney who chose not to serve it on the debtor's employer because he was technically no longer in default. Thereafter, in March, 1991, the debtor again fell into default, the creditor levied the same wage execution signed December 10, 1990 on April 10, 1991. Thereafter the debtor made an additional payment on April 18, 1990, thereby again making himself current.
The debtor complains that the wage execution levied on April 10, 1991 was no longer valid and that a new one had to be applied for when he fell into default in March of 1991. He argues that by accepting payments from December 12, 1990 to the time of the March default, the creditor waived his right to rely on the wage execution earlier obtained. The creditor argues that it makes no sense to cause it to get a new wage execution.[1]
It argues, hypothetically, that the debtor could operate in bad faith, fail to make his monthly payment, watch while the creditor applies for a new wage execution and then, in the time it takes for the court to act upon it and return the signed application to the creditor, come to the creditor with payment CT Page 4035 and make himself current. This would cause additional expense to the creditor in legal fees and manhours to the court. The six dollar fee for administrative costs in connection with the wage execution application would be the only cost to the debtor. See Connecticut General Statutes 52-361a(a).
In this case, the creditor was faced with payment, bringing the account current in accordance with the court's weekly order, before the signed wage execution was returned for service. It chose not to serve it under those circumstances but claims that its rights thereunder, to serve it in the event of subsequent default, were nevertheless preserved.
Unfortunately, the attorneys have not cited any authority for either position, and the court has not discovered anything directly on point either. Therefore, by way of anology as well as reference to the governing statutes, this court struggles to a conclusion that the creditor could still rely on the one and only signed wage execution it had.
Connecticut General Statutes 52-361a(e) states: "A wage execution shall be served within one year from its issuance and returned within thirty days from the satisfaction of judgment." The former wage execution statute (52-361) which was repealed, contained no one-year deadline for service. Presumably, the legislature wanted to promote speed and finality to debt collection cases. There is no other relevant time limitation.
There are other sections of the statute that upon consultation could be relied upon to support the creditor's position or to defeat arguments that the debtor might have raised. For example, Subsection (a) of Connecticut General Statutes 52-361a requires that certain information be set forth in the application. An argument could be made that what the court did in signing the first order might not be the same or control what it would do if faced with a later one (had the creditor herein applied for a second one as argued mandatory by the debtor) in light of a difference in information that would be provided. That argument, however, if made, relies on the assumption that court action upon wage executions is discretionary. That is not the case. See, Connecticut General Statutes 52-361a(b) which provides:
 (b) Issuance. On receipt of the application, a clerk of the superior court shall issue a wage execution against the judgment debtor, directed to a levying officer, to enforce payment of the judgment.
Therefore, even if the debtor had a great track record of CT Page 4036 payment, any default could furnish ground for a wage execution application, which if properly completed, would require granting. The former wage execution statute (52-361) which was repealed, caused "the court or any judge thereof" to issue the execution. Presumably, the legislature viewed action as purely ministerial and sought to eliminate further judicial intervention and discretion if ever any was contemplated in this area. In any event, when a new procedure is established to collect debts from the debtor's wages or benefits, the statute must be strictly followed. Crysto Soap Co. v. Callahan, J.,5 Conn. Sup. 406 (1937). Therefore, with mandatory clerical action, it is hard to pretend that any judicial thought process is involved.
Another section of the statute that limits debtor's right as well as the ability to make a compelling argument in support of the debtor's position in this case is 52-361b. For example, had the debtor herein waited to make payment until after the execution had been levied, but while the 20 day stay were still in effect, such payment would not undermine the validity of the lien. A motion to modify in accordance with 52-361b(d) within 20 days of service on the employer would allow the stay to remain in effect until determination of the claim for modification. Connecticut General Statutes 52-361a(d). But no challenge to validity was contemplated or provided for within the confines of the statutes themselves.
The only argument left to the debtor is one of estoppel/waiver. Resorting to the area of landlord-tenant relations, the court looks to what the Supreme Court has said regarding a landlord's duty to mitigate his damages — citing in specific to Danpar Assoc. v. Somersville Mills Sales Room, Inc.,182 Conn. 444 (1980): The landlord "is required to make reasonable efforts to minimize damages," id. at 446; and it is "unreasonable for the landlord to reject an offer which would have placed it in statu quo ante." Id. at 447. See also Vespoli v. Pagliarulo, 212 Conn. 1, 4 (1989); Warner v. Konover,210 Conn. 150, 154 (1989).
While estoppel is applicable as a defense to a debt collection action, the proceedings in question are post judgment and there is a question as to whether it can be raised at this time.[2] Assuming that the doctrine does apply to post judgment proceedings, there is, nevertheless, little evidence upon which to establish its viability.
An equitable estoppel arises only where one party has done something intended or calculated to induce another to believe in the existence of certain facts and to act on that belief. Bozzi v. Bozzi, 177 Conn. 232, 242 (1979). A reasonable reliance upon CT Page 4037 the misleading conduct, resulting in some detriment to the party claiming the estoppel is also required. Id.
There is insufficient evidence here to establish either of these essential factors.[3]
Therefore, in light of the foregoing analysis, the wage execution was valid.
KATZ, J.