[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REFEREE'S MEMORANDUM OF LAW
On or about June 6, 1984, the plaintiff, Harold Weiner, entered a lease with the defendant, Contemporary Expressions, Inc. for a portion of the Westgate Shopping Center in Norwich, Connecticut. The lease was guaranteed by the defendant, Thomas Paul Azzara, President of Contemporary Expressions, Inc. The plaintiff was represented in negotiations by his son, Ronald Weiner, Esq., who was not available as a witness for trial of this matter.
The lease included extension terms and two addendas.
It is undisputed that the defendant defaulted, during the extension term of the lease. The defendant specifically failed to pay rent and common area maintenance charges for the period from November 1988 through September 1989. In addition to the rental claim, the plaintiff has brought this action seeking property taxes, costs of repair, and attorney's fees. The defendant, on the other hand, has denied liability for property taxes and repairs, and alleges as a special defense that the plaintiff failed to mitigate.
As to the property tax claim, paragraph 29 of the lease provides that the tenant shall pay a proportionate share of any increase in the real estate property taxes as of the October 1, 1982 assessment. The second addendum to the lease, paragraph 4, changed the base assessment day to October 1, 1984. Under CT Page 2812 the terms of paragraph 29, the landlord is to advise the tenant of the amount of each tax bill and the proportion thereof, if any, payable by the tenant, "and tenant shall pay said portion to landlord on demand." The tenant denied that it ever received notice of any increase in the taxes. The plaintiff, however, placed into evidence certain notices regarding the taxes for 1985 and 1986. The plaintiff failed to place in, to evidence any notices of subsequent tax adjustments, nor did the plaintiff place into evidence any written demand of payment, for same. Under the terms of the lease, the tenant is only liable for its proportionate share of the taxes as advised by the landlord, and said taxes are only payable on demand. The landlord's claim for taxes in this case relates to assessment years 1986, 1987 and 1988. The landlord only provided notice and demand for 1986, and therefore the award of taxes is limited to that year. Also, even for the taxes claimed for that year, the base tax year is 1982 on the notice, not 1984 as provided in the addendum. Therefore, the tax adjustment due for that year should be reduced to $210.28 (1987 tax equals $12,417.79 less one-half base year tax of 1984, $11,093.56, equals $1,314.23 x .16 equals $210.28.)
As to the repairs, the landlord bases his claim for extensive restoration of the premises, following vacating by the tenant, on paragraph 13 of the lease. Paragraph 13, in fact, passes onto the tenant the cost of removing any alterations and improvements performed by the tenant during the course of the lease. However, the landlord's position ignores paragraph 3 of the second addendum. Under said second addendum, the landlord granted permission to the tenant to make certain alterations and improvements and limited the tenant's obligation to restore to the condition of the premises upon completion of such improvements and alterations. Paragraph 3 of the second addendum expressly set aside the contradictory provisions of paragraph 13 of the underlying lease. Testimony was clear at trial that the tenant had performed a series of alterations and improvements prior to entering the premises in 1984, that the plaintiff, or at least the plaintiff's son, Ronald Weiner, Esq., was aware of the nature of these improvements, that a sketch plan of the improvements had been presented to the landlord, and that the landlord had, subsequent to the improvements being made, seen the improvements and not objected to same in any form. Further, all of the funds sought by the landlord to restore the premises relate to improvements undertaken in 1984 by the tenant; the tenant, according to testimony at trial, made no improvements subsequent to that date. Given the wording of the second addendum to the lease and the conduct of the parties since 1984, the landlord's claim for costs of repair and renovation cannot be sustained. CT Page 2813
As to attorney's fees, the landlord submitted an itemized billing from his attorneys. One of the attorneys presented the computer backup to this billing. It was apparent that the billing was on a straight hourly basis in accordance with customary and usual time charges and expenses. All of the time incurred related to the enforcement of the lease and the legal proceeding securing back rental, C.A.M. payments, etc. The tenant argues in its brief that the attorney's fees should be reduced to 15% of total recovery or some similar figure. The lease, however, provides for reimbursement "for the expense of attorney's fees and disbursements. . .so far as the same are reasonable in amount." The fees imposed are reasonable as to rate, and the time charged appears to be reasonable for the case at hand. Therefore, the overall charge appears acceptable.
As to mitigation, the landlord testified that at the instigation of the defendants he had entered negotiations with Arrow Paper Supply Company for reletting the premises, that he pursued those negotiations to conclusion, and that only upon the presentation of a written lease to Arrow did Arrow, itself, back out of the deal. Landlord appears to have conducted himself professionally in these negotiations and acted in good faith in trying to secure a substitute tenant. Following Arrow's decision not to go forward with the written lease, the landlord posted the premises for lease and actively sought tenants. Several prospects were pursued, but none entered substantive negotiations. The landlord never re-entered and took over the premises during the term of the lease, other than placing signs in the windows advertising for tenants. See, Sagamore Corporation v. Willcutt, 120 Conn. 315 (1935). Under the facts of this case, it is not at all clear that the landlord even had a duty to mitigate. See, Dewart Building Partnership v. Union Trust Company, 4 Conn. App. 683, 687
(1985). The landlord never acted in bad faith and never refused to rent the premises to any prospective tenant. See, Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384,390 (1989). If the landlord was required to mitigate, he was only ". . .required to make reasonable efforts to minimize damages. What constitutes reasonable effort under the circumstances of a particular case is a question of fact for the trier." Danpar Associates v. Somersville Mills Sales Room, Inc., 182 Conn. 444, 446 (1980). Under the facts of this case the landlord took reasonable steps to mitigate.
The defendants claim that the plaintiff should have informed them once the verbal agreement with Arrow failed to materialize into a written lease. The defendants would impose on the landlord a duty, not just to mitigate, but to give CT Page 2814 notice to the tenant of mitigation efforts. The case law, however, makes no such requirement. The landlord, to preserve its right to sue for rent over the lease term, must make a good faith effort to relet, but is under no affirmative duty to account to the tenant for its actions. See, Vespoli v. Pagliarulo, 212 Conn. 1 (1989).
The plaintiff submitted an offer of judgment in the amount of $23,000.00 If legal interest is not added to the rent and C.A.M. payments, total judgment does not equal $23,000.00 and plaintiff would not be entitled to 12% interest on the judgment in accordance with 52-192a. However, case law makes clear that legal interest is to be included in computing overall damages for purposes of qualifying for 12% interest payment under 52-192a. See, Gillis v. Gillis, 21 Conn. App. 549, 554-56, cert. den. 215 Conn. 815 (1990), and Edward Denike Tree Co. v. Butler, 21 Conn. App. 366 (1990), also allowing attorney's fees to be included in the underlying judgment. Therefore, it appears appropriate to award interest pursuant to 52-192a. However, as to attorney's fees, $4,333.00 in attorney's, fees have already been recommended, and an additional $350.00 under52-192a does not appear warranted or appropriate.
As to the security deposit, the defendants made no formal claim for it, and no order is, therefore, recommended. However, as the defendants do not appear to owe any funds for corrections or repairs to the premises, they would appear to be entitled to the deposit, and it would, therefore, appear appropriate that the deposit either be refunded or credited against the judgment.
RESPECTFULLY SUBMITTED, TIMOTHY D. BATES STATE TRIAL REFEREE