[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 9308
This is an action for breach of lease brought against the corporate defendant and the individual defendants as guarantors of the lease. The principal questions in this case are: 1) whether the plaintiff took reasonable steps to mitigate his damages after defendants abandoned the premises; and 2) whether the plaintiff's temporary two week lease of the premises to a third party after defendants vacated the property terminated defendants' obligation to pay rent as of the date of the subsequent rental.
The facts giving rise to this action are not complicated. The parties entered into a five year lease for the rental of a store in plaintiff's shopping plaza in which defendant ran a pet shop. The lease was for a period of five years, commencing in December, 1987 and terminating in November, 1992. By the terms of the lease defendant was obligated to pay monthly rent in the amount of two thousand one hundred dollars as well as common area maintenance charges, pro-rata real estate taxes, and utilities.
In May, 1991, defendants vacated the premises, returning the key to plaintiff and acknowledging their responsibility for the rent due under the lease. Shortly thereafter, plaintiff placed a sign in the vacant pet shop indicating that that space was available for rent and providing plaintiff's phone number for anyone interested in the space. He also informed a commercial broker of the availability of the space but did not enter into a formal listing agreement with this broker who did not show the property to any prospective tenants until May, 1992. In October, 1991, plaintiff leased the vacant space for two weeks to Ames Department store for it to store materials while its property in plaintiff's plaza was being renovated. Plaintiff received one thousand dollars for this rental which it deducted from the amount owed to it by defendants. Also, in October, 1991, as well as in December, 1991, plaintiff ran an ad in the Hartford Courant offering defendant's space for rent. Each ad ran for four days. In February, 1992, plaintiff entered into a listing agreement with a commercial broker who undertook efforts, including substantial advertising, to market the space formerly occupied by defendants.
Plaintiff seeks unpaid rent for the moths April, 1991, through November, 1992, as well as miscellaneous other damages CT Page 9309 totalling approximately forty seven thousand dollars. Defendants' principal claim, as previously noted, is that plaintiff has failed to take reasonable steps to mitigate his damages, and that in any event, the rental for two years of the premises to Ames terminated the lease and therefore relieved defendant of any obligation to pay rent after October, 1991.
"It is well established that in an action for damages for breach of a lease, the injured party is under a duty to mitigate his or her damages. The duty to mitigate requires a landlord to `make reasonable efforts' to minimize damages; which includes taking steps to relet the premises. What constitutes reasonable efforts is a question of fact for the trier." Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384 (1989). Under the circumstances plaintiff failed to take reasonable steps to mitigate his damages for the period June, 1991 through January, 1992, and therefore will not be awarded damages for unpaid rent for that period.
Upon defendant's moving out, plaintiff placed a sign in the window and advised a broker of the availability of the premises. From June, 1991, until October, 1991, no other efforts were taken to relet the premises. The first positive step was the placement of an advertisement in the Hartford Courant in October for a period of four days. No other efforts to lease the property were made until another advertisement was placed in the Courant in December, 1991, also for a four day period. It was not until February, 1992, when a commercial broker was retained, that serious and reasonable efforts were made to market the property. This case is almost identical to Rokalor, supra, in which the tenant abandoned the premises and was thereafter sued for unpaid rent. In denying plaintiff's claim for unpaid rent the court concluded that the unexplained failure of the plaintiff to retain a broker for four months constituted a failure to mitigate damages. In this case, almost ten months elapses before plaintiff authorized a broker to market the vacant property, even though plaintiff is a developer of plazas and presumably familiar with the need to aggressively market the property in light of the deteriorated economic situation described by plaintiff's witnesses. While the "duty to mitigate damages did not require the plaintiff to sacrifice any substantial right of its own; or to exalt the interests of the tenant above its own;" Danpar Associates v. Somersville Mills Sales Room, Inc., 182 Conn. 444, 445 (1980) (cites omitted); he is required to take steps that are reasonably calculated to CT Page 9310 relet the premises. These efforts were not forthcoming until February, 1992.
Finally, defendants' claim that plaintiff's two week temporary rental of the premises in October, 1991, terminated the rental agreement is without merit. Plaintiff is obliged to mitigate his damages. The temporary lease was consistent with that obligation. It would be anomalous to hold that plaintiff's efforts to mitigate relieved defendant of his obligations under the lease.
Therefore, judgment shall enter for the plaintiff as to counts one and two in the following amounts:
Rent (4/91-6/91) @ $2,100 $ 6,300.00
Rent (2/92-11/92) @ $2,100 21,000.00
Real Estate Taxes (per Ex. A) 201.84
Water and Fire (per Ex. A) 343.70
CAM charges (per Ex. A) 420.00
Gas Bills 440.82
Electric Bill (per Ex. A) 305.62
Hartford Courant ads (per Ex. A) 392.22
 Attorney's Fees 3,729.42 _________
TOTAL $33,070.62
 LESS CREDIT -1,000.00 _________ TOTAL DUE $32,070.62
SO ORDERED: HOLZBERG, J.