[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action for unpaid rent and damages to premises CT Page 9928 commenced by writ of attachment issued in September of 1993, plaintiff Route 80 Associates presented evidence through its General Partner, David Young. David Young testified in part that plaintiff Route 80 Associates is a partnership which owned a parcel of land on Foxon Road in North Branford, Connecticut, on which was situated a building, known as 25 Foxon Road, Branford, that for several years had been used as a restaurant.
David Young testified further that Route 80 Associates signed a lease with defendant Gregory Hrampanis which called for the defendant to operate a restaurant in the building. Signed on April 21, 1989, the lease contains a schedule of monthly rental payments graduated by year, starting at $1,650 and ending at $2,175 per month during the tenth year of its term. In addition to rental payments, the lease obligates the defendant to pay a fee for any rental payments untimely made. Furthermore, paragraph 40 of the lease obligates the defendant to pay all taxes levied on the real and personal property on the demised premises. Paragraph 40 also states that "[l]andlord shall present to the tenant on a timely basis copies of invoices, bills and/or statements reflecting these [tax] charges."
Defendant Gregory Hrampanis testified that shortly after signing the lease he upgraded the premises by investing $180,000 in improvements. The improvements included placing tile on the entire floor, panelling the walls, installing new chandeliers, new booths, tables and chairs, new equipment in the kitchen, new plumbing, and creating certain access for the disabled. The defendant testified further that he and his brother-in-law, Paul, did most of the work relative to the improvements. He named his restaurant the Foxon Diner.
In January of 1990 the defendant, having the consent of the plaintiff, turned the management of the restaurant over to Paul. At that time all rental payments were current. The defendant and Paul agreed that the latter would pay the rent as well as the taxes. Sometime during the Summer of 1991 the defendant asked the plaintiff whether Paul was living up to his responsibilities. The plaintiff rebuffed the inquiry, by telling the defendant to "mind his own business." The restaurant did not fare well during Paul's management; the Internal Revenue CT Page 9929 Service closed it.
However in the Fall of 1992 defendant Gregory Hrampanis returned and reopened the restaurant. Unfortunately, his mother was killed by a car in an accident which occurred in front of the restaurant on November 13, 1992.
In May of 1993 the defendant informed David Young that he would like to sell the restaurant to a person by the name of Georgeos Zacharias, and that he would need the plaintiff to agree to an assignment of his lease in this regard.[1] Defendant Hrampanis showed the plaintiff a copy of a document, introduced as Exhibit 1, captioned "Letter of Intention." Signed by Georgeos Zacharias and the defendant, the letter, dated May 25, 1993, sets out the essential terms of the sale, including the $45,000 sale price, and acknowledges a $1,000 good-faith deposit. The letter also commits Georgeos Zacharias to have paid $20,000 in cash by the date of the closing, with the balance of $25,000 amortized over a five-year period.
Defendant Gregory Hrampanis testified that David Young responded to his request to sell his business by stating that he was not interested in having another restaurant occupy the space; instead he desired to have offices occupy the space, and that he should remove all of his restaurant equipment. David Young countered the defendant's version of this conversation. David Young testified that he told the defendant that if he paid the back rent in full, he would agree to the assignment of the lease so that the defendant could sell the restaurant. At that time the defendant owed less than $6,000 in back rent.
During the week following this conversation, the defendant closed the restaurant, and about three weeks later, he was served with a notice to quit. The defendant removed all of his equipment, including booths, shelves, tables, and a cooler-freezer, from the rental space, and left the keys inside. As stated earlier, the plaintiff brought this action by way of writ of attachment in September of 1993. CT Page 9930
Thereafter, David Young placed a "for rent" sign in the window of the building at 25 Foxon Road as the only public method of informing anyone interested of its availability. The plaintiff did not advertise the premises in a newspaper; nor did the plaintiff list the space with a realtor.
However, Robert Teodosio, owner of the King Realty Company, testified at the trial that he informed David Young during the early part of May 1994 that a client was inquiring about the building. Robert Teodosio stated that David Young responded by saying that he was not certain about the status of the property, and that he did not want to make any long-term commitments.
On September 6, 1994 Route 80 Associates was divested of its interest in the subject property by virtue of a foreclosure proceeding instituted by the Bank of Commerce in January of 1994. Title vested in the bank on September 6, 1994.
Specifically, plaintiff Route 80 Associates seeks the following:
a] loss rental income
 $ 5,956.50 due as of July 10, 1993 — the date on which the notice to quit was served.
 22,421.00 calculated at $1,725 per month (the amount of the monthly rent designated in the lease) from August 1, 1993 through August 30, 1994;
b] other damages
 6,170.00 as the estimate for repairing physical damages to the premises
675.00 for trash removal;
157.41 lock smith; CT Page 9931
451.00 unpaid water bill;
12,639.40 recomputed property taxes; and,
c] statutory interest
 9,189.77 statutory interest from July 1, 1993 the alleged date of the defendant's breach. ------------
Total: $57,657.08
I. LOSS RENTAL INCOME
Clearly the statement by David Young to the defendant to remove all of the equipment from the building, coupled with the service of the notice to quit, evidenced the exercise of the plaintiff's option of terminating the leasing contract. Sagamore Corporationv. Willcutt, 120 Conn. 315, 317-18 (1935). The law thus recognizes this action for breach of contract, SagamoreCorporation, supra. As stated by the Appellate Court inRokalor v. Connecticut Eating Enterprises,18 Conn. App. 384 (1989),
 When a breach of contract occurs, "[t]he contract is not put out of existence, though all further performance of the obligations undertaken by each party may cease. It survives for the purpose of measuring the claims arising out of the breach." (Citation omitted.)
Id. at 392.
However, the landlord is obligated to mitigate his damages. Danpar Associates v. Somersville Mills SalesRoom, Inc. 182 Conn. 444 (1980). The obligation to mitigate damages encompasses a good faith effort on the landlord's part to advertise the availability of the premises to prospective tenants, as well as to consider responsibly any prospective tenant proffered by the person being dispossessed. CT Page 9932
From the evidence presented, the Court finds that the plaintiff did not advertise the availability of the premises in an effective manner. The plaintiff did not advertise the premises in a trade paper or regular newspaper. Furthermore, the plaintiff did not list the premises with a real estate agent. In addition, the plaintiff presented no explanation for not so advertising the availability of the premises.
The Court also finds that the plaintiff did not exercise good faith in its refusal to consider an assignment of the lease to Georgeos Zacharias, pursuant to his proposal to purchase the defendant's restaurant. The Court finds that this proposal was communicated clearly by the defendant to the plaintiff. The Court finds the defendant's and Georgeos Zacharias' testimony credible with respect to the latter's interest in purchasing the restaurant. Certainly, the plaintiff may decide not to have another restaurant in the premises; nevertheless, such a decision does not discharge its duty to mitigate damages. Danpar Associates supra, at 446.
From all of the evidence presented on the issue of mitigation, the Court finds that the plaintiff did not discharge its duty of mitigating its damages.
The Court finds that the evidence supports a finding that the defendant is responsible for rent in the amount of $5,956.50 — the unpaid amount or the period terminating with the service of the notice to quit. The Court finds that because of an absence of mitigation the defendant is not liable for the balance of the loss-rent claim.
II. RECOMPUTED PROPERTY TAXES
The plaintiff seeks $12,639.40 as recomputed taxes for that portion of the property on which the restaurant building sits. The plaintiff claims that the parties earlier agreed that the restaurant building — situated on plaintiff's real property — represents 35 per cent of the plaintiff's total tax bill for all of the land and buildings on the property. The defendant opposes paying the requested taxes. The defendant testified that the plaintiff never gave him a tax bill. David Young testified that he informed the defendant and CT Page 9933 Paul verbally about the tax bx bills, and that he gave the defendant copies of some of the tax bills. However, David Young also testified that he never provided the defendant with a writing stating the balances due for taxes.
Paragraph 40 of the lease states the following with respect to taxes:
 . . . the tenant shall be responsible for payment of all real and personal property taxes assessed against the demised premises. Landlord shall present to the tenant on a timely basis copies of invoices, bills and/or statements reflecting these charges. The tenant shall promptly pay same. Tenant recognized that this is a triple net lease and he shall be responsible for any and all expenses attributable to the building.
The Court finds that where, as here, the tenant materially breaches the lease by terminating rental payments, the landlord as in this case is justified in the assumption that it is relieved of a continuing duty to provided tax statements to the tenant. The Court finds that inasmuch as the parties had frequent contact through out their relationship, and inasmuch as the leasing contract survives for the purpose of measuring damages, the defendant is liable for the recomputed tax liability of $12,639.40. The Court understands that this is an amount that was due prior and not subsequent to the termination of the tenancy.
III. OTHER DAMAGES
Among the other damages is plaintiff's claim for $6,170.00 as the estimate for repairing physical damages to the premises. David Young testified that none of the repairs fitting the estimate were done, and that the plaintiff no longer owns the building. The Court finds that he did not suffer a compensable financial loss as to the items detailed in the estimate.
However, inasmuch as the plaintiff sustained an out-of-pocket loss for trash removal ($675.00), a CT Page 9934 locksmith ($157.41) and an unpaid water bill ($451.00) the Court awards damages to cover these losses.
IV. STATUTORY INTEREST
Connecticut General Statutes Section 37-3a provides in pertinent part that " . . . interest at the rate of ten per cent a year . . . may be recovered and allowed in civil actions . . . ." The Court finds that since the plaintiff did not render prompt written statements to the defendant as to the amounts due for taxes, as required by the lease, and did not render prompt verbal statements of the amounts due for taxes, the awarding of prejudgment interest is not appropriate.
V. AMOUNT OF JUDGMENT
In accordance with the foregoing reasoning and authorities, the Court enters judgment for the plaintiff in the amount of $19,879.31.
VI. ORDER RE' PREJUDGMENT REMEDY
At the commencement of this action, the Court awarded a prejudgment remedy of $32,500.00. The Court hereby reduces that amount to $19,879.31 to conform to this judgment. Counsel shall file the papers necessary to effectuate this Order.
Clarance J. Jones, Judge