[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought pursuant to § 47a-14h, commonly referred to as a "housing enforcement action".
The plaintiff, pursuant to said statute, has paid $3300 to the court clerk's office, in lieu of payment of rent at $1100 per month for November 1996, December 1996 and January 1997.
The plaintiff (tenant) claims the defendant (landlord) has failed to keep the leased premises in a fit and habitable condition, resulting in damage to her furnishings and other personal property.
The plaintiff's major complaint is that the basement of the CT Page 146-A single family home she was renting leaked resulting in water and mildew damage to property and furnishings therein, as well as the inability to use that portion of the basement which was finished as a recreation room.
The parties entered into a two year lease effective April 29, 1995. The landlord was aware of some water in the basement at times in the past. There was a dehumidifier in the basement, provided by the landlord, at the time the lease was signed.
In January 1996, after a substantial winter snow fall, water seeped into the basement. The tenant called the landlord and he went to the property. There was standing water in various locations throughout the basement ranging in depth from about 1/2" (landlord's estimate} to 2" — 3" (tenant's estimate). The plaintiff had cardboard boxes of sundry possessions stored in the unfinished portion of the basement, including clothing.
There was a sump pump which was working at the time, but because of the unusually heavy precipitation, there was too much water in the basement for the sump pump to handle.
To alleviate the problem the landlord, within a few days of the complaint rented equipment and purchased material to install a trench to drain the water away from the house. He advised the CT Page 146-B tenant to raise her stored boxes off the floor and to run the dehumidifier (from the evidence credited by the Court, it was in working order).
In April 1996, the plaintiff again called the landlord about water in the basement.
When the landlord responded, he saw some minimal puddling at the edges of the basement. He found the sump pump was working, but the dehumidifier was not turned on. In visits to the property in February and March 1996, he saw no water on the basement floor.
In August 1996, the tenant complained to the landlord that mildew and mold had formed on the basement walls, her furnishings and the personal property left stored in boxes on the floor.
The plaintiff claims damages of $6285 which she claims to be the value of damaged personal property. She also seeks an award by way of rent reduction from January through December 1996 claiming that 25% of the leased premises were not inhabitable for that time. In addition she claims time lost from work and costs of moving the stored boxes.
As to these claims, the Court finds the issues for the CT Page 146-C defendants.
The tenant has an obligation to mitigate any damages and is required to make reasonable efforts to do so. Danpar Associatesv. Somersville Mills Sales Room, Inc., 182 Conn. 444, 446 (1980).
In this case, after an unusually heavy precipitation there was some water accumulation in the basement and the tenant's belongings were wet. She did nothing to alleviate the situation. She failed to use the dehumidifier provided. She made no effort to dry the items which were wet. The landlord, on the other hand, make reasonable efforts to correct the problem, and, had the tenant done likewise, would probably have had little, if any, loss.
An expert witness provided by the landlord, who inspected the property in November 1996 testified that the materials which had gotten wet, should have been moved, dried out, repacked and restored on pallets off the floor. He testified that the absorbent nature of the material, without drying, would result in mildew and mold. In November 1996, the tenant was still not using the dehumidifier which he checked and found to be working properly. He also testified there was no standing water when he inspected the property. In short, any damages were the result of inaction by the tenant. CT Page 146-D
Further, the plaintiff has the burden of proving the amount of damages claimed. This she failed to do. She provided only a vague generalized description of the items stored and a "ball park" figure of their value. Such an offer of proof is insufficient, even if there had been liability.
As an aside, the landlord did, in fact, in December 1996, provide the tenant with new storage boxes and pallets. He also had the mold and mildew removed by a professional cleaning service, including the upholstery and carpeting.
For the same reasons, the Court does not find that the premises were uninhabitable for any appreciable time. The water problem in January was quickly alleviated and the mold and mildew which later occurred, resulted from the tenants inaction in mitigating the situation, including her failure to use the dehumidifier provided to her.
The remaining claims of the tenant are without merit. The landlord removed the washer and dryer per his agreement with the tenant. He explained at the lease signing that he intended to do so once he found a residence of his own. He did not provide those appliances as part of the lease. As for the claim of a broken garbage disposal, that was repaired in fact, and the problem was CT Page 146-E it had been jammed with metal objects (screw and nails).
The plaintiff's claim that she is owed interest on her security deposit is not cognizable under § 47a-14h.
With respect to the defendants' counterclaim, any financial costs incurred by the landlord were either for necessary repairs, or incurred as a result of voluntary agreements reached with the plaintiff.
Accordingly, judgment shall enter in favor of the defendant landlord on the complaint, and in favor of the plaintiff tenant on the counterclaim. Payments made into Court and being held by the clerk of the court shall be remitted to the defendant landlord.
Klaczak, J.