582 So.2d 685 (1991)
QUINTERO-CHADID CORP., a Florida Corp., and Jairo Quintero, Individually, Appellants,
v.
Joseph M. GERSTEN, Appellee.
No. 88-1912.
District Court of Appeal of Florida, Third District.
June 25, 1991.
*686 Law Offices of Paul Morris, P.A. and Paul Morris and Law Offices of Gary Siegel, P.A. and Gary Siegel, Miami, for appellants.
Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, and Joel S. Perwin, Miami, for appellee.
Before WARNER, POLEN and GARRETT, Associate Judges.
WARNER, MARTHA C., Associate Judge.
This is an appeal from an order denying appellants' motion to vacate a default and default judgment entered against them. Their contentions are that the default should be vacated because of improper service of the amended complaint and that the default judgment should be vacated because appellants were not given notice and an opportunity to be heard on the issue of damages. We affirm as to the issue regarding the entry of the default but reverse as to the entry of the final default judgment.
The parties entered into a five year lease of commercial property commencing January 1, 1987. Monthly rent was calculated using a base amount plus annual consumer price index adjustments. The lease provided for a default by the tenant as follows:
16. Default. In the event the TENANT shall default in the payment of rent or any other sums payable by TENANT herein, and such default shall continue for a period of five (5) days, ... then and in addition to any and all other legal remedies and rights, the LANDLORD may declare the entire balance of the rent for the remainder of the term to be due and payable and may collect the same by distress or otherwise. In addition, LANDLORD shall have a lien on the personal property of the TENANT which is located in the LEASED PREMISES and in order to protect its security interest in the said LEASED PREMISES. *687 In the event of a default, LANDLORD may terminate this lease and retake possession of the LEASED PREMISES or enter the LEASED PREMISES, and relet the same without termination, in which latter event, the TENANT covenants and agrees to pay any deficiency after TENANT is credited with the rent thereby obtained less all repairs and expenses incurred by the LANDLORD in connection with such reletting, including, but not limited to, the expenses of obtaining possession. It is expressly understood that TENANT, in the event of default, shall be responsible for the balance of the rent provided for herein (as adjusted from time to time) for the Lease Term, however, TENANT shall be credited with rent thereby obtained only in the event the LEASED PREMISES are relet. It is expressly understood that LANDLORD shall have no obligation to actually relet the LEASED PREMISES, however, LANDLORD shall use reasonable efforts to relet same. LANDLORD'S failure to relet the LEASED PREMISES shall not be raised as a defense by TENANT in any proceedings by LANDLORD to enforce the collection of rent hereunder.
According to the initial complaint for distress, appellants failed to pay the rent due in December, 1987, and suit was filed against them. Service was made on both appellants. About six weeks later an amended complaint was filed in three counts. Count One repeated the claim for a writ of distress, count two was titled "acceleration," and Count three was a claim of civil theft based on removal of property from the premises. The amended complaint was served in accordance with Rule 1.080(a) by mail upon both appellants. On March 28, 1987, appellee moved for entry of a default for failure to answer, which default was entered by the court the following day. Appellee then moved for entry of a final default judgment without notice to appellants, attaching affidavits regarding damages, costs, and attorney's fees. A final default judgment in the amount of $184,473.11 plus costs and $10,000 attorney's fees was entered a week later. Pursuant to Rule 1.540(b), appellants moved to vacate the default and default final judgment which was denied, except as to the portion of the final judgment awarding attorney's fees which was vacated. From that order this appeal was taken.
Appellants first claim that the amended complaint, which stated new and different causes of action against them, should have been served in the same manner as a summons. Therefore, no default could be entered because of insufficiency of service. We disagree. Florida Rule of Civil Procedure 1.080(a) provides:
Service; When Required. Unless the court otherwise orders, every pleading subsequent to the initial pleading ... shall be served on each party. No service need be made on parties against whom a default has been entered, except that pleadings asserting new or additional claims against them shall be served in the manner provided for service of summons.
Contrary to appellants' contention, the rule provides that an amended complaint must be served in the same manner as a summons only where a "default has been entered" against a party. Thus the entry of default, not the failure to make an appearance in the suit, is the significant event which triggers the requirement of new service of process. Cf. Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada, 674 F.2d 1365, 1368, n. 3 (11th Cir.1982). Here, there was no default entered until appellants failed to respond to the second amended complaint.
The appellants suggest that there is no logic to a construction of the rule which requires notice by summons to a defaulted party but no summons to a party against whom no default has been entered even though the party is technically in default for failure to appear. We find that the rule is not inconsistent, nor is there any due process violation for failure to provide adequate notice. When a complaint is filed, a summons is served in accordance with the statutes governing service of process on the defendant. That summons, and not the complaint itself, notifies the defendants *688 that they have twenty days in which to file an answer or a default will be entered for the relief demanded. Florida Rule of Civil Procedure Form 1.902(a). Thus, the purpose of the summons is to put the defendant on notice of the obligation to answer the complaint within a specified time.
If plaintiff amends the complaint, then Rule 1.190(a) provides the mechanism:
(a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served... . A party shall plead in response to an amended pleading within 20 days after service of the amended pleading unless the court otherwise orders.
Where the amendment occurs prior to serving a responsive pleading there is no distinction between amendments made before or after the original time for answering the complaint passes. If an amended complaint is filed a party shall have an additional twenty days to respond. Thus, a party could not be defaulted until twenty days from service of the amended complaint, even if it is filed shortly before the answer to the initial complaint would have been due. Isle of Sandalfoot Contractors, Inc. v. Jess Leisch-General Contractors, Inc., 426 So.2d 1223 (Fla. 4th DCA 1983). In the instant case, so long as appellee waited an additional twenty days after service of the amended complaint before obtaining a default, which he did, the default was not entered contrary to any rule.
There is nothing contrary to procedural due process in the default entered in this case. The amended complaint was served upon appellants at the same address where service of process was made, and the certificate of service is prima facie proof that service in compliance with the rules has been made. Florida Rule of Civil Procedure 1.080(f). What due process requires is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Although service of any amended complaint in the same manner as the original complaint may be a preferred notice to a nonappearing defendant where new and additional claims are asserted, the rationale for such a requirement would be the same whether the amended complaint was filed two days after the original complaint or twenty two days (after plaintiff would be entitled to a default). Nevertheless, notice of the amended complaint by mail at appellants' summons addresses does not violate due process.
Appellants' second contention is that a default judgment was entered against appellants without notice where the damages were unliquidated. They claim that the damages were unliquidated because, first, the complaint did not allege which option upon default appellee-landlord was exercising and, secondly, that the calculations of rent due were not readily ascertainable from the complaint and lease.
In Count II the appellees alleged a claim for acceleration of rent and specifically requested a judgment for the accelerated amount. By reason of the default, appellee has admitted the well-pleaded allegations as well as the relief prayed for so long as it is consistent with substantive law. Board of Regents v. Stinson-Head, Inc., 504 So.2d 1374 (Fla. 4th DCA 1987); Freeman v. Freeman, 447 So.2d 963 (Fla. 1st DCA 1984). Upon default by the tenant of the terms of a lease, the landlord has three alternative courses of action: 1) He may treat the lease as terminated and retake possession on his own account, thus ending further liability on the part of the lessee; 2) he may retake possession on account of the lessee and hold the lessee liable for the difference between the rent due under the lease and what in good faith the lessor may recover from reletting; or 3) he may do nothing, and hold the lessee liable for all rent due if the lease contains an acceleration clause and the lessor elects to exercise this option. Coast Federal Sav. & Loan Ass'n v. Deloach, 362 So.2d 982 (Fla. 2d DCA 1978). However, if he exercises the acceleration option, the lessor *689 cannot collect the full amount due and then relet to a third person. Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enterprises, Inc., 235 So.2d 344 (Fla. 2d DCA 1970). This is clear because the exercise of the acceleration clause does not terminate the lease. It merely requires payment of all future rent in advance. See Fifty States Management Corp. v. Pioneer Auto Parks, Inc., 46 N.Y.2d 573, 415 N.Y.S.2d 800, 389 N.E.2d 113 (1979). Once a lessor accelerates the rent he cannot also demand possession of the premises. Jimmy Hall's Morningside, Inc., at 346.
If the landlord goes back into possession and relets the premises, he must give the tenant credit for the rents received. Jimmy Hall's. This is required by the default provisions of the lease agreement in this case as well. Thus, it was error for the court to enter a default judgment for the entire amount of the future rents without provision for an accounting to be made for the rents received from any reletting through the end of the lease term. Jimmy Hall's Morningside, Inc., at 346.
We also agree that the damages do not appear to us to be readily calculable from the lease document without resort to extrinsic proof. We say this in part because in our own calculations of the rent due we cannot duplicate the amount specified in the damage affidavit. In addition, the amount of future rent cannot be calculated from the face of the lease because the lease contains consumer price index adjustments including four years beyond the year of the final judgment. Thus, any rent increase adjustment attributable to a consumer price index rise would be speculative at best. On remand the appellants are entitled to a hearing with respect to amount of rent due.[1]
Finally, the value of an air conditioner taken by appellants was also included in the final judgment. Appellee readily concedes that its value was unliquidated and that appellants are entitled to a hearing as to that item of damages.
Judgment vacated and cause remanded for a new hearing on damages consistent with this opinion.
POLEN, MARK E. and GARRETT, EUGENE S., Associate Judges, concur.
NOTES
[1] We would also note that in Vibrant Video, Inc. v. Dixie Pointe Associates, 567 So.2d 1003 (Fla. 3d DCA 1990) this court held that a landlord's future monetary losses must be reduced to present money value.