K AND R REALTY ASSOCIATES *v.* CLAUDIA GAGNON
(12073)

FOTI, LANDAU and FREEDMAN, Js.

Argued December 6, 1993—decision released March 29, 1994

*William L. Stevens,* for the appellant (plaintiff).

*Paul Bialobrzeski,* for the appellee (defendant).

FREEDMAN, J. The plaintiff, K and R Realty Associates, appeals from the judgment of the trial court denying its claim for damages for the difference between the amount of rent due under a lease with a new tenant and the amount due under a lease breached by the defendant, Claudia Gagnon. The plaintiff claims that the trial court improperly determined that the plaintiff was not entitled to recover the difference in rent between the two leases because the plaintiff was not acting as an agent of the defendant when it relet the demised premises. We agree.

The plaintiff commenced an action against the defendant on December 26, 1991, for breach of a commercial lease. On February 24, 1992, the defendant was defaulted for failure to plead and the matter was claimed for a hearing in damages. At the hearing in damages, held on November 3, 1992, the plaintiff claimed damages totaling $40,205.03. The trial court rendered judgment for the plaintiff and awarded $22,123.37 in damages.

The following facts are not in dispute. The plaintiff leased one store in a nine unit commercial complex to the defendant for the period November 1, 1990, to April 30, 1996. In August, 1991, the defendant defaulted on the payment of rent and failed to make any further payments. The defendant removed all of her belongings prior to April 1, 1992, and turned over the keys at that time. The plaintiff made efforts to lease the store formerly occupied by the defendant, and, in April, 1992, secured a new tenant to lease the store together with two additional adjoining stores. The new lease commenced July 1, 1992, and ended July 30, 1995.

At the hearing in damages, the plaintiff claimed the following damages: loss of rental income from the date of default, August, 1991, to the date of the new lease, July 1, 1992, $13,698.41; real estate commission paid in connection with the defendant's lease, $3773; real estate commission paid in connection with the new lease, $1620.85; miscellaneous utility bills, $271.51; attorney's fees, $2759.60; and the difference between the rent due under the lease with the defendant and the rent due from the new tenant for the period July 1, 1992, through April, 1996, $18,081.66. The trial court awarded the plaintiff all of the amounts requested except the $18,081.66 difference in rent between the new lease and the old lease.

The trial court found that the plaintiff had accepted surrender of the premises and terminated the defendant's tenancy and right of possession as of July 1, 1992. The trial court concluded, however, that the plaintiff "acted for itself and not as the defendant's agent, and, therefore, [was] not entitled to the difference in rents as claimed." In reaching this conclusion, the trial court relied on a Michigan Supreme Court case, *Michigan Lafayette Building Co.* v. *Continental Bank*, 261 Mich. 256, 246 N.W. 53 (1933).

In *Michigan Lafayette Building Co.* v. *Continental Bank,* supra, the defendant tenant, who had leased store number three from the plaintiff landlord for the period of May 29, 1924, to May 29, 1929, defaulted on its lease in May, 1925. The landlord regained possession of the leased premises and, thereafter, leased store number three and store number two to a new tenant. In a previous action against the tenant, the landlord recovered the rent due from the date of the default to the date the new tenant took possession. The new tenant's lease expired prior to May 29, 1929, and a subsequent tenant was found but that tenant canceled after a few months. The landlord then commenced a new

action against the tenant to recover for the "unrented balance of the term." Id., 258. The original lease between the plaintiff and the defendant provided that on the default of the tenant, the landlord could take possession and " 'relet the said premises for such time, expiring either before or after the end of the term of this lease, as first in this lease specified in the name of the lessor but *as agent of lessee,* and to receive the rent therefor holding the lessee liable for any deficiency . . . .' " (Emphasis added.) Id., 260.

The Michigan Supreme Court found that in reletting the space the landlord acted for itself and not as an agent of the tenant and, therefore, established surrender as a matter of law. In making this determination, the court focused in part on the character of the reletting by the landlord. The space relet was created by removing a partition and joining two stores, the store originally leased to the tenant and another store. Because the character of the space was changed so significantly, the court held that the landlord was not acting as an agent of the tenant but for himself when he relet the "new" space. The court also considered the facts that before the new tenant took possession the "plaintiff had charged [the] defendant each month with the rent and made demand through monthly statements," but thereafter, "although the premises were vacant at times" the plaintiff failed "to make similar charges on its books and demand thereafter . . . ." Id., 261. The court found that this "constituted so radical a change in practice as to carry a strong inference of change of position regarding [the] defendant's continued liability, and support[ed] the claim of completed surrender." Id.

In the present case, the trial court, relying on *Michigan Lafayette,* held that the plaintiff acted for itself, and not as the defendant's agent and, therefore, was

not entitled to the difference in rents claimed.[1] The trial court's reliance on this 1933 Michigan case was misplaced. In Connecticut, "[w]hen the lessee breaches a lease for commercial property, the lessor has two options: (1) to terminate the tenancy; or (2) to refuse to accept the surrender. *Sagamore Corporation* v. *Willcutt,* 120 Conn. 315, 317-18, 180 A. 464 (1935); *Dewart Building Partnership* v. *Union Trust Co.,* 4 Conn. App. 683, 687, 496 A.2d 241 (1985). Where the landlord elects to continue the tenancy, he may sue to recover the rent due under the terms of the lease. Under this course of action, the landlord is under no duty to mitigate damages. *Dewart Building Partnership* v. *Union Trust Co.,* supra. When the landlord elects to terminate the tenancy, however, the action is one for breach of contract; *Sagamore Corporation* v. *Willcutt,* supra; and, when the tenancy is terminated, the landlord is obliged to mitigate his damages. *Dewart Building Partnership* v. *Union Trust Co.,* supra. When the tenancy ends, the tenant is released from his obligations under the lease and is, therefore, no longer obliged to pay rent. *Feneck* v. *Nowakowski,* 146 Conn. 434, 436, 151 A.2d 891 (1959). . . .

---

[1] Section 20 of the lease between the parties provides in pertinent part: "Upon the happening of any Event of Default, Landlord, if he shall elect, may (1) collect each installment of rental hereunder as and when the same matures, or (2) Landlord, or any other person by his order, may re-enter the Demised Premises, without process of law, and without being liable to any prosecution therefor, may either elect to terminate this Lease or, if Landlord desires, not terminate the Lease, but terminate the right to possession and occupancy and re-let the Demised Premises to any person, firm or corporation as the agent of the tenant *or otherwise,* for whatever rent he shall obtain, applying the avails of such letting first to the payment of such expense as the Landlord may incur in the re-entering and re-letting of same, and then to the payment of the rent due hereunder and the fulfillment of the Tenant's covenants, and paying over to the tenant the balance, if any; and in case of its deficiency, the Tenant shall remain liable therefor. . . ." (Emphasis added.)

We note that this language, unlike the language in the lease in *Michigan Lafayette,* does not require the landlord to act solely as the agent of the

"Although the termination of the tenancy releases a tenant from his obligations under the lease, such release does not leave the landlord without legal recourse to recover damages. Where a landlord, as in this case, elects to terminate the tenancy and to regain possession of the premises, although he cannot institute an action for rent due under the lease, he may sue for a breach of the lease. Where the action is one for breach of the lease, basic contract principles apply." *Rokalor, Inc.* v. *Connecticut Eating Enterprises, Inc.,* 18 Conn. App. 384, 388–89, 558 A.2d 265 (1989).

"The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. Practice Book § 4061; *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 752, 601 A.2d 1005 (1992); *Zachs* v. *Groppo,* 207 Conn. 683, 689, 542 A.2d 1145 (1988); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 53, 607 A.2d 424 (1992).

The facts as found by the trial court are not challenged. The proper principles of law to be applied in

tenant. In fact, it explicitly authorizes the landlord to act "as the agent of the tenant *or otherwise* . . . ." (Emphasis added.) Clearly the parties intended that the landlord be authorized to act in a capacity other than as the agent for the tenant or the words "or otherwise" would be without meaning. "The parties' intent is ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. *Sturman* v. *Socha,* 191 Conn. 1, 10, 463 A.2d 527 (1983)." (Internal quotation marks omitted.) *Harvey* v. *Daddona,* 29 Conn. App. 369, 375, 615 A.2d 177 (1992).

this case are those set forth in *Rokalor, Inc.* v. *Connecticut Eating Enterprises, Inc.,* supra. Applying *Rokalor* to the facts of this case, we conclude that because the plaintiff terminated the tenancy as of July 1, 1992, it properly pursued an action against the defendant for breach of lease. The plaintiff, thus, had a duty to mitigate its damages. See *Dewart Building Partnership* v. *Union Trust Co.,* supra.

Having concluded that the plaintiff was required to mitigate its damages, we must next determine whether reletting the space leased to the defendant together with other adjoining space constituted a proper mitigation of damages. The plaintiff could have refused to rent to the new tenant on the basis that the new tenant would lease only the space vacated by the defendant if it included other additional adjoining space. If, however, the plaintiff thereafter was unable to lease the defendant's space and then sought to recover for breach of the lease, the plaintiff ran the risk that it would be denied recovery because it had failed to mitigate its damages properly. To say, therefore, that the plaintiff was barred from any recovery for lost rent because the space relet by the plaintiff included the defendant's space together with additional adjoining space would place an inordinate burden on the plaintiff and quite possibly work to the detriment of the defendant.

" 'A lease is nothing more than a contract. *Robinson* v. *Weitz,* 171 Conn. 545, 551, [370 A.2d 1066 (1976)]. Thus, as in any other contract action the measure of damages is that the award should place the injured party in the same position as he would have been in had the contract been fully performed. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 404–405, [365 A.2d 1086 (1976)]. As a consequence, the unpaid rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff

by reason of the defendant's breach of contract of lease. The plaintiff would be entitled to recover the damages which would naturally follow from such a breach. *Sagamore Corporation* v. *Willcutt,* [supra, 320].' See also *Danpar Associates* v. *Somersville Mills Sales Room, Inc.,* 182 Conn. 444, 445–46, 438 A.2d 708 (1980); 49 Am. Jur. 2d, Landlord and Tenant § 183." *Rokalor, Inc.* v. *Connecticut Eating Enterprises, Inc.,* supra, 389.

The appropriate measure of damages is one that would put this plaintiff in the same position it would have been in had the defendant not breached the lease. The trial court first must determine what portion of the total rent payable by the new tenant is allocable to the space previously leased by the defendant. Once that determination is made, the trial court then must determine if the plaintiff had in fact sustained any damages.

The portion of the judgment that denies recovery to the plaintiff for lost rent during the period July 1, 1992, through April, 1996, is reversed and the matter is remanded to the trial court for a hearing to determine the amount, if any, of such damages, and with direction to render judgment awarding any such damages to the plaintiff.

In this opinion the other judges concurred.