929 P.2d 88

HI KAI INVESTMENT, LTD., a Hawai'i corporation, and Marshall Realty, LTD., a Hawai'i corporation, Plaintiffs–Appellants,

v.

ALOHA FUTONS BEDS & WATERBEDS, INC., a Hawai'i corporation; Honolulu Book Shops, Ltd., a Hawai'i corporation; and Sheila Revee, Defendants,

and

HONOLULU BOOK SHOPS, LTD., Cross–Claim Plaintiff–Appellant,

v.

ALOHA FUTONS BEDS & WATERBEDS, INC., Cross–Claim Defendant–Appellee.

No. 17816.

Supreme Court of Hawai'i.

Dec. 18, 1996.

Philip J. Leas and James H. Ashford of Cades Schutte Fleming & Wright, on the briefs, Honolulu, for plaintiffs-appellants Hi Kai Investment, Ltd. and Marshall Realty, Ltd.

Steven K.S. Chung and Timothy N. Tack of Oshima, Chun, Fong & Chung, on the briefs, Honolulu, for defendant-appellee/cross-claim plaintiff-appellant Honolulu Book Shops, Ltd.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Plaintiffs-Appellants Hi Kai Investment, Ltd., and Marshall Realty, Ltd. (collectively Landlords), appeal from the judgments and orders entered on October 11, 1993, and January 4, 1994.[1] Defendant–Appellee Honolulu Book Shops (HBS) appeals from the default judgment entered on October 5, 1993, in its cross-claim against Defendant–Appellee Aloha Futons Beds & Waterbeds, Inc. (Aloha Futons).[2]

This appeal raises the issue whether Hawai'i Revised Statutes (HRS) Chapter 666 precludes a landlord, who exercises his option to regain possession of his premises under the statute, from bringing a common law action for damages for breach of contract, as measured by future lost rent. For the reasons discussed below, we hold that it does not. Accordingly, we vacate (1) the district court's October 11, 1993, judgment against Aloha Futons and HBS, and (2) the district court's October 5, 1993, default judgment in HBS's cross-claim against Aloha Futons, and remand for a further determination of damages.

## I. BACKGROUND

HBS entered into a ten-year lease with Kacor Investments Corp. (Kacor) in 1986. In 1991, Kacor sold the property to Landlords. HBS subsequently assigned its leasehold interest to Aloha Futons in September 1992. When Aloha Futons failed to pay the rent as agreed, Landlords filed a complaint

---

1. By order dated January 25, 1994, Sheila Revee was dismissed as a defendant.

2. HBS wishes to preserve its right of indemnification against Aloha Futons in the event that

HBS were ultimately held liable for an amount greater than that awarded by the default judgment. *See* section II, *infra*.

for summary possession on April 2, 1993, under HRS Chapter 666 (1993).[3] Landlords sought: (1) possession of the premises; (2) $15,063.32 in past rent through March 31, 1993; and (3) other damages resulting from the default, including interest, costs, future rent, and attorneys' fees.

The district court granted writs of possession against HBS and Aloha Futons (collectively Tenants). The court also awarded Landlords damages for the arrearage accrued through the dates on which the writs were issued,[4] but denied them an award of damages based on future rents for the unexpired lease term accruing after the writs were issued.[5] Specifically, the court stated: "So, the Court finds the arguments advanced by the Defendant for termination of the Lease as of the date of possession, that as of the date possession is recovered, to be more in line with the case law and the public policy of the State of [Hawaiʻi]." The court held, as a matter of law, that HRS § 666–13 (1993) "cuts off the landlord's right to damages as of the date of the issuance of a Writ of Possession."

Landlords moved for (1) leave to amend the Complaint to conform to trial testimony concerning their right to damages equivalent to future rent, less mitigation, and (2) to amend the judgment to reflect the increased damages sought in the motion to amend the Complaint. The district court denied both motions. Landlords subsequently appealed.

On May 5, 1993, HBS filed a cross-claim against Aloha Futons for damages resulting from Aloha Futons's breach of the lease. The district court entered a default judgment against Aloha Futons on October 5, 1993, in the amount of $26,069.75, which included fees and costs incurred by HBS. HBS then moved to alter or amend the judgment against Alo-

ha Futons, but the district court denied the motion. Subsequently, HBS filed a cross-appeal to preserve its indemnification rights against Aloha Futons, in the event that HBS were ultimately liable for an amount greater than that awarded by the default judgment against Aloha Futons.

On appeal, Landlords argue that the district court erred (1) when it denied Landlords full damages for Tenants's breach of the lease, as measured by lost rents for the unexpired lease term, subject to mitigation, and (2) when it denied Landlords recovery of accelerated rent which "was due and had accrued under the [l]ease contract prior to the entry of the judgment for possession."[6]

## II. *STANDARDS OF REVIEW*

■ There are no factual issues disputed on appeal. Although the district court entered no formal findings of fact (FOF) or conclusions of law (COL), it did draw legal conclusions that are reviewed *de novo. State v. Bowe,* 77 Hawaiʻi 51, 53, 881 P.2d 538, 541 (1994). A COL is not binding upon an appellate court and is freely reviewable for its correctness. *Id.*

## III. *DISCUSSION*

Landlords assert that (1) the lease provisions allow them to recover damages, as measured by future rent, and (2) HRS Chapter 666, Hawaiʻi's summary possession statute, does not preclude them from suing for both possession and damages. We review these arguments in light of: (1) the language, policies, and legislative history of HRS Chapter 666; (2) relevant case law of this and other jurisdictions; and (3) our previous holding that "statutes abrogating common law rights must be strictly construed[.]" *Fonseca v.*

---

**3.** HRS § 666–1 (1993) provides in relevant part: **Summary possession on termination or forfeiture of lease.** Whenever any lessee or tenant or any person holding under the lessee or tenant, holds possession of lands or tenements without right, after the termination of the tenancy, ..., the person entitled to the premises may be restored to the possession thereof in manner hereinafter provided.

**4.** The trial court awarded damages to Appellants as follows: $19,123.66 as to HBS and $20,651.03 as to Aloha Futons.

**5.** Appellants presented undisputed evidence at trial that the total amount of unpaid rent and charges, without interest, until the end of the lease term was $254,204.59.

**6.** Because we hold, on other grounds, that Tenants are liable for damages based on unaccrued future rent, we do not address this issue.

*Pacific Construction,* 54 Haw. 578, 585, 513 P.2d 156, 160 (1973); *see also Burns Int'l Security Services, Inc. v. Dept. of Transportation,* 66 Haw. 607, 611, 671 P.2d 446, 449 (1983) ("[w]here it does not appear there was a legislative purpose in superseding the common law, the common law will be followed"); HRS § 1–1 (1993) ("The common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of [Hawai'i] in all cases, except as otherwise *expressly* provided ... by the laws of the State[ ] or fixed by Hawaiian judicial precedent. . . ." (Emphasis added.)).

### A. The Lease Requires Landlords' Damages to be Measured by Future Rent.

. Section 18.3 of the lease provides that damages upon Tenants's breach are equal to the total rent under the lease, less income from subsequent reletting:

> Should Landlord at any time terminate this Lease for any breach in addition to any other remedies it may have, *it may recover from Tenant all damages it may incur by reason of such breach, including the cost of recovering the Premises, reasonable attorneys' fees and the amount of rent and charges equivalent to Rent reserved in this Lease for the remainder of the stated term, all of which amounts shall be immediately due and payable from Tenant to Landlord,* and *Landlord shall thereafter pay to Tenant, at such time or times as Landlord shall be in receipt of the same, the Rent for the Premises for the remainder of the stated term collected from tenants thereafter using the premises,* up to the amount of the Rent reserved which has theretofore been collected from Tenant, less costs of reletting.

(Emphases added.) [7]

**7.** Section 18.8 of the lease provides in pertinent part:

For the purposes of this Lease, the Rent reserved for the balance of the Term as used herein shall be deemed to be the aggregate of the Fixed Minimum Rent reserved for the balance of the Term remaining after such default or breach by Tenant, plus the amount of years remaining in the balance of the Term multiplied by the annual average of the Percentage Rent and all other Additional Rent theretofore paid or payable by Tenant for the three (3) years last preceding such breach or default or, if three (3) years have not

Leases are essentially contractual in nature and are reviewed under principles of contract law. *Cho Mark Oriental Food v. K & K Int'l,* 73 Haw. 509, 519, 836 P.2d 1057, 1063 (1992); *Maui Land & Pineapple Co. v. Dillingham Corp.,* 67 Haw. 4, 10, 674 P.2d 390, 394 (1984) (leases should be analyzed under principles of contract law); *Lau v. Bautista,* 61 Haw. 144, 149, 598 P.2d 161 Haw. P.2d 161, 165 (1975) ("a lease is essentially a contractual relationship"); *Lemle v. Breeden,* 51 Haw. 426, 433, 462 P.2d 470, 475 (1969) (a lease is "more importantly[ ] a contractual relationship"). "Absent an ambiguity, contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." *Cho Mark,* 73 Haw.· at 520, 836 P.2d at 1064. Moreover, the "construction and the legal effect to be given a contract is a question of law freely reviewable by an appellate court." *Id.* at 519, 836 P.2d at 1063.

In this case, the lease provides that damages include "charges equivalent to Rent reserved in th[e] Lease for the remainder of the stated term. . . ." Thus, the plain language of the lease calculates damages by lost rents up to the end of the lease term, less mitigation.[8]

### B. HRS Chapter 666 Does Not Bar Landlords From Seeking Damages.

Tenants claim, however, that Landlords, by suing for possession under HRS Chapter 666, waived their right to recover damages. Tenants also assert that enforcement of sections 18.3 and 18.8 would contravene the clear language and policies of HRS Chapter 666.

#### 1. Applicable Rules of Statutory Construction

Statutes are reviewed *de novo* under the "right/wrong" standard. *Shimabuku*

then elapsed, the annual average of the Percentage Rent and all other Additional Rent theretofore paid or payable by Tenant.

**8.** The purpose of such a clause is to permit a landlord, in the event of a default by a tenant, to end the lease and recover the amount of rent due for the remainder of the term. *See Queen Emma Foundation v. Tingco,* 74 Haw. 294, 299–300, 845 P.2d 1186, 1189 (1992); *see also First National Bank v. Dykstra,* 684 P.2d 957 (Colo.App. 1984).

*v. Montgomery Elevator Co.*, 79 Hawai'i 352, 357, 903 P.2d 48, 52 (1995). Moreover, the primary duty of this court is to determine and give full effect to the intent of the legislature. *Id.* at 357, 903 P.2d at 52; *Sato v. Tawata*, 79 Hawai'i 14, 15–16, 897 P.2d 941, 942–43 (1995) (Ramil, J., dissenting); *Sol v. AIG Hawai'i Ins. Co.*, 76 Hawai'i 304, 307, 875 P.2d 921, 924, *reconsideration denied*, 76 Hawai'i 353, 877 P.2d 890 (1994). We discern the intent of the legislature primarily from the language of the statute, "[a]lthough we may consider sources other than the language of the statute itself." *Shimabuku*, 79 Hawai'i at 357, 903 P.2d at 52.

## 2. HRS Chapter 666 Does Not Terminate a Landlord's Common Law Right to Sue for Damages.

In construing the language of HRS §§ 666–7 [9] and 666–13,[10] we find no support for the contention that the issuance of the writ of possession precludes Landlords from recovering damages for Tenants's breach. The plain and unambiguous language of HRS § 666–7 merely allows a landlord, at any time "up to the time of judgment," to ask the district court to award damages, while HRS § 666–13 terminates the landlord-tenant relationship. HRS § 666–7 does not, as Tenants assert, limit a landlord's award to damages that have accrued as of "the time of judgment."

This court, wherever possible, "interprets every word, clause, and sentence of a statute to give them effect." *Shimabuku*, 79 Hawai'i at 357, 903 P.2d at 52 (citation omitted). HRS § 666–7 clearly distinguishes between rent, profits, and damages, indicating that these are separate and distinct claims that may be joined with the summary possession action. The legislative history of the

original 1915 version of HRS § 666–7 supports this conclusion. The Senate Judiciary Committee noted that:

> Under the present laws a party must bring an action for summary possession and then a separate action for rents, profits and damages. *There is no reason why the actions should not be consolidated, as this Bill proposes.*

Sen. Stand. Comm. Rep., in 1915 Senate Journal, at 796–97 (emphasis added). Thus, when it originally enacted HRS § 666–7, the legislature merely intended to allow landlords the opportunity to *consolidate* claims for monetary rents, profits, and damages with a claim for possession, not to cut off a landlord's remedy for damages. *See, e.g., Sunset Fuel & Engineering Co. v. Compton*, 97 Or.App. 244, 775 P.2d 901, 903, *review denied*, 308 Or. 466, 781 P.2d 1215 (1989) (summary possession "terminates the leasehold estate ... [but] it does not impair the tenant's contractual obligation or liability for anticipatory breach of the covenant to rent the premises in the future."); *K and R Realty Associates v. Gagnon*, 33 Conn.App. 815, 639 A.2d 524, 526 (1994) (holding that a landlord who elects to terminate tenancy via summary possession may institute an action for breach of contract). Based on the foregoing, we hold that HRS Chapter 666 does not preclude a landlord from joining a breach of contract action, seeking damages as measured by future rent, with a summary possession action.

Public policy also favors this conclusion. Under the common law, and consistent with Tenants's analysis of HRS Chapter 666, a landlord could refuse to sue for possession, allow the premises to remain empty, and hold the breaching tenant liable for rent as it

---

9. HRS § 666–7 provides:

> **Jurisdiction; joinder.** In any action for summary possession begun under this chapter, the plaintiff may join claims for rent, lodging, board, profits, damages, and waste, where these arise out of and refer to the land or premises, irrespective of the amount claimed.
> In any such action, whether the ground or cause is nonpayment of rent or otherwise, the plaintiff may join in the action a prayer for accrued rent due, if any, and also for rent, profits, and damages up to the time of judg-

ment, if such is rendered in the plaintiff's favor, without prejudice to such action or ground for summary possession as may be set forth in the complaint.

10. HRS § 666–13 provides:

> **Effect of writ.** Whenever a writ is issued for the removal of any tenant, the contract for the use of the premises, if any exists, and the relation of landlord and tenant between the parties, shall be deemed to be cancelled and annulled.

accrues. This encourages a waste of resources, not only those of the litigants, but those of the court as well. Moreover, it is usually in society's interest to encourage the use of rental property, as opposed to allowing it to remain idle. In *Schneiker v. Gordon,* 732 P.2d 603 (Colo.1987), the Colorado Supreme Court noted that

> [i]n no other context of which we are aware is an injured party permitted to sit by idly and suffer avoidable economic loss and thereafter to visit the full adverse economic consequences upon the party whose breach initiated the chain of events causing the loss.... The rules for awarding damages in the context of abandonment and breach by the tenant should discourage, rather than encourage, economic and physical waste.

*Id.* at 610. To hold that a landlord, injured by a breaching tenant, is precluded by HRS Chapter 666 from recovering damages flowing from the breach, would be to abrogate the common law absent clear legislative intent and to place this court's imprimatur of approval on economic, physical, and judicial waste.[11] We decline to do so.

### 3. *Landlords May Sue for Damages Under Breach of Contract Theory.*

In the alternative, Tenants claim that Landlords cannot have full possession of the premises, collect future "rent," and simultaneously preclude Tenants from occupying the premises for the remainder of the lease term. Landlords, however, seek contract damages, not "rent" as such.

Under the common law, if a tenant breaches a lease, a landlord may: (1) terminate the tenancy and sue for damages under breach of contract theory; (2) elect to continue the tenancy, and sue periodically for rent as it accrues; or (3) terminate the lease, retake possession, and absolve tenant from all liability. *See, e.g., Quintero–Chadid Corp. v. Gersten,* 582 So.2d 685, 688 (Fla.App. 1991);[12] *Rokalor Inc. v. Conn. Eating Ent., Inc.,* 18 Conn.App. 384, 558 A.2d 265, 268 (1989); *Maida v. Main Bldg. of Houston,* 473 S.W.2d 648, 651 (Tex.App.1971). Under the first option, the landlord must mitigate damages. *Rokalor,* 558 A.2d at 268. Termination of the tenancy releases the tenant from lease obligations, including the payment of rent. *Id.* A landlord, however, still may recover *damages* for breach of contract. *Id.; see also Hart v. Vermont Inv. Ltd. Partnership,* 667 A.2d 578, 587 (D.C.App.1995) (breach of a lease creates a right to damages); *Holly Farm Foods, Inc. v. Kuykendall,* 114 N.C.App. 412, 442 S.E.2d 94, 96 (1994) (breaching tenant is liable not for rent but for damages flowing from breach of contract); *Schneiker,* 732 P.2d at 608 (landlord can maintain an action for contract damages caused by tenant's breach); *Benderson v. Poss,* 142 A.D.2d 937, 530 N.Y.S.2d 362, 363 (N.Y.App.Div.1988) ("what survives after the termination of a lease is not liability for rents, but liability for damages").

Furthermore, a basic precept of contract law is that a party who sustains a loss by the breach of another is entitled to com-

---

11. Assuming, *arguendo,* that HRS chapter 666 did constrain Landlords from obtaining both possession and damages as measured by future rent, Tenants still would not prevail because of the savings clause, section 18.3, in the lease. For example, in *Robert A. McNeil Corp. v. Paul,* 757 P.2d 165 (Colo.App.1988), after landlords obtained summary possession of a commercial property and evicted the breaching tenant, they sought damages as measured by back and future rent. The court held that Colorado's summary possession statute did, indeed, operate to relieve a tenant from paying future rent unless the lease agreement provided otherwise. *See also Knight v. OMI Corp.,* 174 Mont. 72, 568 P.2d 552, 554 (1977). Similarly, in the instant case, the lease specifically provides for damages to be measured by lost future rent.

12. The *Quintero–Chadid* court explained these options as follows:

> Upon default ... the landlord ... 1) ... may treat the lease as terminated and retake possession on his own account, thus ending further liability of the part of the lessee; 2) he may retake possession on account of the lessee and hold the lessee liable for the difference between the rent due under the lease and what in good faith the lessor may recover from reletting; or 3) he may do nothing, and hold the lessee liable for all rent due if the lease contains an acceleration clause and the lessor elects to exercise this option.

*Quintero-Chadid,* 582 So.2d at 688.

pensation that will "actually or as precisely as possible compensate the injured party." *Amfac v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 128, 839 P.2d 10, 32, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citing *Ferreira v. Honolulu Star–Bulletin, Ltd.*, 44 Haw. 567, 573–74, 356 P.2d 651, 655, *reh'g denied*, 44 Haw. 581, 357 P.2d 112 (1960)). Despite this rule, Tenants argue that damages should not be awarded in this case because they are speculative and uncertain. We disagree.

■ Under the lease, future unpaid rent less mitigation is the measure of damages to be used in the event of a breach by Tenants. Other jurisdictions agree with this formula.[13] For example, *Rokalor* held that

> [u]npaid [future] rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff by reason of the defendant's breach of contract of lease. The plaintiff would be entitled to recover the damages which would naturally follow from such a breach.... We conclude that ... in an action for breach of a lease, the amount of rent agreed to by the parties is a proper measure of damages....

*Rokalor*, 558 A.2d at 268–9.

■ This " 'court cannot rewrite the contract of the parties,' " *Fortune v. Wong*, 68 Haw. 1, 11, 702 P.2d 299, 306 (1985) (citations omitted); *see also Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawai'i, Ltd.*, 76 Hawai'i 277, 300, 875 P.2d 894, 917 (1994); *First Ins. Co. of Hawai'i, Ltd. v. Lawrence*, 77 Hawai'i 2, 16, 881 P.2d 489, 503, *reconsideration denied*, 77 Hawai'i 373, 884 P.2d 1149 (1994), but must "construe and enforce [it,] not make or alter [it]." *Strouss v. Simmons*, 66 Haw. 32, 40, 657 P.2d 1004, 1010 (1982). Pursuant to section 18.3 of the lease, both HBS and Aloha Futons could have reasonably foreseen that they would be liable for rental of the premises for the entire term of the lease, subject to the proceeds of any subsequent reletting. Both HBS and Aloha Futons were aware, or should have been aware, that (1) the length of the lease term was ten years; (2) failure to pay the rent would constitute a "default" that would allow Landlords to terminate the lease; and (3) termination of the lease before expiration of the ten-year term would result in their liability for rent payments for the remainder of the lease term, as provided in section 18.3 of the lease. Had either Aloha Futons or HBS continued to pay the rent agreed under the lease, Landlord would have collected the rental value of the premises for the entire lease term. In doing so, Landlords would have realized the benefit of the bargain.[14] Accordingly, we reject Tenants's contention that damages based upon future unaccrued rent were speculative, unforeseeable, or penalties. This result protects Landlords's expectancy interest and places them in the same position they would have been in had the contract been fully performed by Tenants.[15]

13. *See, e.g., Holly Farm Foods*, 442 S.E.2d at 96 (N.C.App.1994) ("[t]he measure of damages is the amount of rent the lessor would have received in rent for the remainder of the term, less the amount received for the new tenant"); *4–Way, Inc. v. Bryan*, 581 So.2d 208, 209 (Fla.App. 1991) (landlord may take possession *for the account of the tenant*, less mitigation); *Sunset Fuel & Engineering Co.*, 775 P.2d at 903 (landlord may recover consequential damages from breaching tenant after landlord has successfully sued for possession); *Rauch v. Circle Theatre*, 176 Ind.App. 130, 374 N.E.2d 546, 552 (1978) ("measure of damages will normally be the difference between the rent reserved in the lease for the unexpired term of the lease and the reasonable rental value of the premises for that term or the actual rent procured by a subsequent reletting"); *Maida v. Main Bldg.*, 473 S.W.2d 648, 651 (Tex.App.1971) (landlord may sue for possession and damages in an amount equal to the "contractual rental ... less the amount realized from reletting"); *Amick v. Metropolitan Mortgage & Sec. Co.*, 453 P.2d 412, 417 (Alaska 1969) (landlord may recover amount due under the lease, less the amount of mitigation).

14. We, therefore, also reject Tenants's argument that allowing Landlords to recover possession of the premises and damages amounts to a "double recovery."

15. Although not raised on appeal, in their answering brief Tenants assert that, because HRS § 666–13 ends the landlord-tenant relationship, awarding Landlords damages as measured by future rent would require a "continuing relationship" between the parties and "raise serious concerns regarding court supervision and enforcement of such a scheme...." While it is true that the landlord-tenant relationship is ended, the relationship that results from a breach of contract has just begun. In addition, the primary purpose

82

### C. HBS's Cross–Claim Against Aloha Futons

Because we hold that Landlords are entitled to damages that include amounts based upon the unpaid rent for the balance of the lease term accruing after the district court issued the writs of possession, we vacate the default judgment in HBS's cross-claim against Aloha Futons and remand this portion of the case to allow the district court to reconsider the amount Aloha Futons must indemnify HBS.

### IV. CONCLUSION

Accordingly, we vacate (1) the district court's October 11, 1993 judgment against Aloha Futons and HBS, and (2) the district court's October 5, 1993 default judgment in HBS's cross-claim against Aloha Futons. We remand this case to the district court for a determination of damages measured by lost

future rent, less mitigation and credits, and any other interest, fees and costs to which Landlords may be entitled.

**Summary possession on termination or forfeiture of lease.** Whenever any lessee or tenant of any lands or tenements or any person holding under the lessee or tenant, holds possession of lands or tenements without right, after the termination of the tenancy, . . ., the person entitled to the premises may be restored to the possession thereof in manner hereinafter provided.

---

of HRS chapter 666 is to provide speedy relief for the *landlord* "against tenants who have violated a material condition of their lease...." *Queen Emma Foundation v. Tingco,* 74 Haw.

294, 299–300, 845 P.2d 1186, 1189 (1992); *see also Kimball v. Lincoln,* 72 Haw. 117, 124, 809 P.2d 1130, 1134 (1991); *Lum v. Sun,* 70 Haw. 288, 293, 769 P.2d 1091, 1094 (1989).