[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION PROCEDURAL BACKGROUND AND FACTS
The plaintiff, Fox Run Mall Associates, Limited Partnership (Fox Run), filed a ten count complaint on April 22, 1997 against the defendants, George V. Lawler ("Lawler"), Frances C. Lawler[1] and Colonial Lantern Card Gift Shop, Inc., d/b/a Village Card Gift Shop (Colonial Lantern). Fox Run alleges against Colonial Lantern claims for breach of its lease agreement with Fox Run (count one), unjust enrichment (count five) and use and occupancy (count eight). As to Lawler, Fox Run alleges breach of his guaranty (count two). In addition, Fox Run sues Lawler to hold him personally liable, as proprietor of Colonial Lantern or as one who derives benefit from Colonial Lantern, for breach of the lease (count three), unjust enrichment (count six) and use and occupancy (count nine).
By way of Special Defense the defendants argue constructive eviction, claiming that Fox Run did not maintain the premises, that Fox Run detracted from and interfered with their business by allowing organizations to conduct fund-raising activities in the mini-mall, and that Fox Run favored a large grocery store tenant at the mall with increased parking thereby limiting available parking for Colonial Lantern's customers. They also allege in their special defense that Fox Run failed to mitigate damages. Lawler, by way of special defense, alleges that his personal guarantee on the lease was only for two years.
The defendants filed two counterclaims and a claim for setoff. The first counterclaim alleges that Fox Run breached the lease agreement by failing to make reasonable repairs to the roof and sidewalk gutters, thus rendering the premises unfit for its purpose as a card shop, and affecting a constructive eviction. In their second counterclaim, the CT Page 3 defendants allege that Fox Run violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., by inducing Colonial Lantern, a long-term tenant, to enter a contract of adhesion to continue as a tenant. The defendants also claim a setoff on the basis of the allegations of the two counterclaims.
Colonial Lantern was incorporated in 1979. Lawler was the sole stockholder. The corporation conducted a gift and card shop business at the Premises under a series of five year commercial leases signed by Lawler as President. Colonial Lantern lost its corporate status when it was dissolved by forfeiture on or about May 30, 1989. On January 1, 1994, Colonial Lantern and Fox Run entered into a commercial lease agreement pursuant to which Colonial Lantern rented from Fox Run 3000 square feet of retail space in Fox Run Mall (the "Premises"). The lease provides for annual basic rent of $30,000 in monthly installments of $2500. In addition, the lease provides for the tenant's payment of a pro rata (3.226 percent) share of taxes and operating costs. The lease was to run from January 1, 1994 to December 31, 1998. For the final three years of the lease term, the tenant was to pay additional rent in accordance with the rent adjustments outlined in paragraph thirteen of the lease. Pursuant to the lease, the landlord retained control of common areas, including parking areas, and the landlord retained responsibility for repair and maintenance of the roof.
The lease provides that Colonial Lantern will pay attorney's fees and costs of collection in the event of default. The lease was signed by Lawler, as President, and was personally guaranteed by him. Lawler guaranteed to make full, faithful and timely payment and performance of the lease agreement. The guaranty also provides for collection costs and attorney's fees in the event of default. Both the lease and the guaranty provide for interest at the rate of 12%.
Because of a dispute with Colonial Lantern over the erection of an unapproved sign in violation of the lease provisions, Fox Run opted to terminate the tenancy on April 14, 1995, by service of notice to quit. The notice to Quit states as a reason for the termination, "The violation of Colonial Lantern Card and Gift Shop Inc., d/b/a Village Card Gift Shop, of Section 19[2] of that certain Lease agreement dated January 1, 1994 which violation results from the wrongful erection of a sign by you on or before February 16, 1995." The notice to quit further provides that "[a]ny and all payments received after the date of service/delivery of this Notice will be accepted as use and occupancy, attorneys fees and/or costs and not as rent."
Colonial Lantern continued in possession and continued to make payments to Fox Run in an amount equivalent to its monthly basic rent of $2500 for CT Page 4 another year through April 1996. During that time, the ledger of Fox Run indicates that Colonial Lantern's payments were received and accounted for as "rent." Lawler considered the payments made after service of the notice to quit as "use and occupancy." Colonial Lantern did not make the additional pro-rata payments called for in the Lease. Colonial Lantern remained in possession until July 10, 1996. Fox Run sold the shopping mall on January 8, 1998.
 FOX RUN'S COMPLAINT
THE BREACH OF LEASE (COUNTS ONE AND THREE) AND THE GUARANTY (COUNT TWO):
The defendants argue that because the plaintiff opted to terminate the tenancy, the obligations under the lease were discharged.[3] "Although the termination of the tenancy releases a tenant from his obligations under the lease, such release does not leave the landlord without legal recourse to recover damages. Where a landlord, as in this case, elects to terminate the tenancy and to regain possession of the premises, although he cannot institute an action for rent due under the lease, he may sue for a breach of the lease. Where the action is one for breach of the lease, basic contract principles apply." Rokalor v. Connecticut Eating Enterprises, 18 Conn. App. 384, 389 (1989).
Colonial Lantern is liable for damages to Fox Run for breach of lease. Fox Run also seeks to hold Lawler individually liable for breach of the Lease Agreement which he executed as President of the corporation. The parties do not dispute that Colonial Lantern was dissolved by forfeiture in May of 1989, prior to the execution of the lease agreement. See General Statutes § 33-890. Following such dissolution, "[a] corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under section 33-88[4] and notify claimants under sections 33-886[5] and 33-887.[6] General Statutes § 33-891 (a). Within three years after dissolution, the dissolved corporation may apply for reinstatement pursuant to General Statutes § 33-892; if the reinstatement is effective, it relates back to the date of dissolution. General Statutes § 33-892 (c). It is undisputed that since its dissolution by forfeiture, Colonial Lantern has not reinstated its corporate status.
"[A]lthough there is a diversity of opinion among courts . . ., the majority rule is that officers may be held personally responsible for contracts made when a dissolved corporation continues to conduct business, regardless of subsequent statutory reinstatement. . . . Such a construction accords with the rule at common law. . . ." (Citations omitted.) J. M. Lvnne Co. v. Geraghty, 204 Conn. 361, 367, 528 A.2d 786
CT Page 5 (1987). "It has been held in other jurisdictions that a de jure corporation which has forfeited its charter and has had its powers suspended, cannot continue to function as a de facto corporation. . . . Connecticut has not yet ruled on this precise issue."Clark-Franklin-Kingston Press, Inc. v. Romano, 12 Conn. App. 121, 126,529 A.2d 240, cert. denied, 205 Conn. 803, 531 A.2d 935 (1987). "Some courts have also held that when a corporation continues to carry on as a corporation after dissolution, and does business beyond that necessary to wind up its affairs, those operating the corporation become individually liable for corporate obligations." Id.
In Clark-Franklin-Kingston Press, Inc. v. Romano, the court upheld the trial court's determination that the officers and directors of the dissolved corporation could not be held personally liable for the corporation's obligations. See id., 126. The court reasoned that "the plaintiff did not by reason of the defect in the reincorporation process, acquire any rights against the individual defendants," because it was clear that the defendants "intended to function as a corporation," and because the facts showed that the defendants had "made an immediate good faith attempt at reincorporation upon learning of their dissolution." Id., 125-26. (The corporation was dissolved by the secretary of the state in May 1980, for failure to file two successive annual reports. In June 1980, the defendants attempted to reinstate the corporation. The defendants incorrectly assumed that this attempt had been successful. In May 1982, upon realizing that corporate status had not been re-conferred, the defendants again attempted to reinstate the corporation and were successful in August 1982.) Here, however, the court lacks such evidence. There was some evidence that Lawler, an attorney, made initial efforts to reincorporate; however, more than three years lapsed after the 1989 dissolution without reinstatement. The lease commenced on January 1, 1994, after which reincorporation never took place. Under these circumstances, Lawler is personally liable for the breach of lease claim.
Lawler is also liable pursuant to the guaranty executed him. The Guaranty Agreement executed by Lawler provides, in part, that "[i]f Tenant shall default at any time in the payment of any rent or any other sums, costs or charges whatsoever, or in the performance of any of the other covenants and obligations of Tenant, pursuant to the Lease, then the undersigned, at his expense, shall on demand of the Landlord, fully and promptly pay all rent, sums, costs and charges to be paid by Tenant, and perform all the other covenants and obligations to be performed by Tenant, under or pursuant to the Lease, and in addition shall on Landlord's demand pay to Landlord any and all sums due to Landlord, including (without limitation) all interest on past due obligations of Tenant, costs advanced by Landlord, and damages and all expenses CT Page 6 (including attorneys fees and litigation costs), that may arise in consequence of Tenant"s default."
DAMAGES
"A lease is nothing more than a contract. Robinson v. Weitz,171 Conn. 545. 551, [370 A.2d 1066 (1976)]. Thus, as many other contract action the measure of damages is that the award should place the injured party in the same position as he would have been in had the contract been fully performed. As a consequence, the unpaid rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff by reason of the defendant's breach of contract or lease. The plaintiff would be entitled to recover the damages which would naturally follow from such a breach. . . . Rokalor, Inc. v. Connecticut EatingEnterprises, Inc., supra, 389." K R Realty Associates v. Gagnon,33 Conn. App. 815, 821, 639 A.2d 524 (1994)
The appropriate measure of damages is one that would put the plaintiff in the same position it would have been in had the defendant not breached the lease. In this case, the plaintiff is entitled to rent due in the amount of $50,000.00[7] plus interest in the amount of $27,000.00; advertising costs in the amount of $4665.60 and attorneys fees and costs in the amount of $27,024.14[8].
UNJUST ENRICHMENT (COUNTS FIVE AND SIX)
Because Fox Run may recover on the contract, the equitable remedy afforded by a claim of unjust enrichment is not available. "Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to contract. 5 S. Wifliston, Contracts (Rev. Ed.) § 1479."Ayotte Bros. Construction Co. v. Finney, 42 Conn. App. 578, 581,680 A.2d 330 (1996).
USE AND OCCUPANCY(COUNTS EIGHT AND NINE)
Fox Run claims it is entitled to recover use and occupancy or the fair rental value of the Premises from Lawler for the period during which Colonial Lantern occupied the Premises following receipt of the notice to quit, that is from April 1995 through June 1997. O'Brien Properties,Inc. v. Rodriguez, 215 Conn. 367, 372, 576 A.2d 469 (1990). That is so. Inasmuch, however, as the court has assessed contract damages for breach of lease and in so doing credited the $2500.00 monthly use and occupancy payments, an award under this count is duplicative and unnecessary.
SPECIAL DEFENSES
CT Page 7
Lawler argues, by way of special defense, that the Guaranty was effective only for the first two years of the lease. The guaranty is limited in duration by rider K, which provides that the guaranty "shall not apply to any options or extensions or renewals of the five year term
ending December 31, 1998." (Emphasis added.) Thus, the guarantee endured for five years, not two.
In another special defense, the defendants claim that Fox Run failed to mitigate damages. The duty to mitigate damages did not require the plaintiff to sacrifice any substantial right of its own; EasternSportswear Co. v. S. Augstein Co.,, 141 Conn. 420, 425, 106 A.2d 476
(1954); or to exalt the interests of the tenant above its own. Id.; RaffCo. v. Murphy, 110 Conn. 234, 243, 147 A. 709 (1929). It was required to make reasonable efforts to minimize damages. Danpar Associates v.Somersville Mills Sales Room, 182 Conn. 444, 446, 438 A.2d 708 (1980). As soon as Fox Run learned that Colonial Lantern had vacated the Premises in July 1996, Fox Run listed the Premises with real estate brokers. From September 1, 1996, through June of 1997, the Premises were advertised in the Hartford Courant over 200 times. These were the "worst years" for real estate; and the Premises were sold in January 1998. Fox Run's account statements for advertising in the Hartford Courant total $4,665.60; The evidence adequately demonstrates Fox Run's reasonable attempts to mitigate damages.
Finally, the defendants failed to prove that the condition of the premises was such that the business was constructively evicted from the premises. "[A] constructive eviction arises where a landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable, and has thereby caused a failure of consideration for the tenant's promise to pay rent." (Internal quotation marks omitted.)Baretta v. T T Structural, Inc., 42 Conn. App. 522, 526, 681 A.2d 359
(1996)." Heritage Square, LLC v. Eoanou, 61 Conn. App. 329, 333; ___ A.2d ___ (2001). The defendants failed to sustain their burden that the premises were untenantable for any of the reasons they advance. Specifically, although Lawler complained of water damage, no evidence was offered that Colonial Lantern was required to vacate the premises at any time because of Fox Run's failure to maintain the premises. Likewise, there was no credible or adequate evidence that Colonial Lantern lost customers or had to go out of business because Fox Run allowed organizations to fund-raise in the mall once or twice a year or because Fox Run leased to a large tenant supermarket in the mall thereby limiting parking. The more credible evidence which came from an employee of another mall store called Roger's Hideaway supports a finding that there were no problems with parking, traffic or maintenance at the mall. The defendants' business was declining and losing customers in 1994 and 1995, they ceased CT Page 8 making any payments to Fox Run after April 1997, and they vacated the Premises in July 1997. Colonial Lantern, however, failed to prove that the business declined, that customers were lost, that they stopped paying Fox Run, or that they vacated the Premises because of anything Fox Run did or failed to do. "It is axiomatic that causation must be removed from the realm of speculation and conjecture." Samose v. Hammer-PasseroNorwalk Chiropractic Group, P.C., 24 Conn. App. 99, 103, 586 A.2d 614, cert. denied, 218 Conn. 903, 588 A.2d 1079 (1991)." PAR Painting, Inc.v. Greenhome O'Mara, Inc. 61 Conn. App. 317 326 ___ A.2d ___ (2001).
In sum, the defendants cannot prevail on their special defenses.
DEFENDANTS' COUNTER-CLAIMS AND REQUEST FOR SETOFF
FAILURE TO REPAIR
The defendants' first counterclaim alleges that Fox Run breached the lease agreement and constructively evicted the tenant by failing properly to maintain the roof thereby causing leaks into the premises with resulting damage to inventory; by failing to maintain the gutter system causing decreased pedestrian traffic and decreased business; and by catering to the needs of a large anchor tenant, a grocery store, with increased parking, thereby limiting the available parking for Colonial Lantern's customers and causing it to suffer a dramatic decline in store traffic and a resultant loss of business. There was scant evidence to support any of these allegations and no evidence to show either the amount of business loss or the cause of that loss. Lawler did present evidence that the card shop had sustained damage to inventory because of water damage, but there was no evidence that water leaks or water damage caused the business to vacate the Premises. "It is axiomatic that causation must be removed from the realm of speculation and conjecture."Samose v. Hammer-Passero Norwalk Chiropractic Group, P.C.,24 Conn. App. 99, 103, 586 A.2d 614, cert. denied, 218 Conn. 903,588 A.2d 1079(1991)." PAR Painting, Inc. v. Greenhorne O'Mara, Inc.61 Conn. App. 317, 326 ___ A.2d ___ (2001). There was no constructive eviction.
CUTPA
The defendants allege that Fox Run was unwilling to negotiate the terms of the January 1994 Lease Agreement with Colonial Lantern and forced it to enter into a contract of adhesion because Fox Run knew that Colonial Lantern would find it difficult to move its operations to another location after twelve years of conducting business at the subject mall. Colonial Lantern alleges the plaintiff took advantage of its superior bargaining position. CT Page 9
"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Hartford Electric Supply Co. v. Allen-BradleyCo., 250 Conn. 334, 367-68, 736 A.2d 824 (1999). "Moreover, [the Supreme Court] has set forth a three part test for satisfying the substantial injury criterion: [1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must be an injury that consumers themselves could not reasonably have avoided." (Internal quotation marks omitted.) Id., 368. The evidence before the court does not satisfy the test for CUTPA. In fact, it is more reasonable to find that Lawler was in the better bargaining position for negotiating the new lease. The real estate market was at its "worst" which would explain why the ledger for the prior lease indicates monthly payments of $3000.00 and why Fox Run overlooked and forgave part of a substantial balance due for rent on the prior lease.
"In determining whether a practice violates CUTPA we use the criteria of whether [it] offends public policy or comes within some established concept of unfairness, whether [it] is immoral, unethical, oppressive or unscrupulous or whether it causes substantial injury to consumers, competitors or other businessmen." PAR Painting, Inc. v. Greenhorne O'Mara, Inc., supra 328. There was no showing that CUTPA was violated or that the plaintiffs alleged damages were established. See Id.
 CONCLUSION
Judgment may enter in favor of the plaintiff on Counts One, Two, Three Eight and Nine. Damages are awarded in the amount of $81,665.60 and attorneys fees and costs in the amount of $27,024.14.
Judgment may enter in favor of the defendants on Counts Five and Six.
Judgment may enter in favor of the plaintiff on the Counterclaims. CT Page 10
Tanzer, J.